IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MICHELLE D. CAMP,                          §
                                           §
         Plaintiff,                        §
                                           §
VS.                                        §
                                           §     Case No. 3:10-CV-00241-N
WACHOVIA MORTGAGE CORPORATION              §
and WORLD SAVINGS BANK,                    §
                                           §
                                           §
         Defendants.                       §

**PLAINTIFF'S BRIEF IN SUPPORT OF HER MOTION ENFORCE SETTLEMENT
AGREEMENT AND MOTION FOR EXPEDITED HEARING**

Respectfully submitted,

**DANISE A. McMAHON, ATTORNEY AT LAW**

P.O. Box 702833
Dallas, Texas 75370
(469) 233-7736
(469) 814-8504 (fax)

**ATTORNEY FOR PLAINTIFF MICHELLE CAMP**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS.................................................................................................... i

INDEX OF AUTHORITIES .......................................................................................... ii

I. INTRODUCTION ......................................................................................................1

II. FACTUAL BACKGROUND .....................................................................................2

III. MOTION FOR EXPEDITED HEARING ................................................................6

IV. LEGAL ARGUMENT AND AUTHORITIES...........................................................6

    A. Texas Law Mandates Enforcement of Settlement.............................................6

    B.   The Terms of the Settlement...........................................................................8

    C.   Defendants' Unauthorized Changes to the Settlement. .................................10

        a.      Plaintiff does not control TLE .........................................................10

        b.      New loan versus loan modification..................................................10

        c.      Escrow for Insurance .......................................................................10

        d.      Confidentiality Agreement ..............................................................11

        e.      Non-Mutual Release ........................................................................11

        f.      Settlement Should be with all Defendants, not just one ..............11

V. ATTORNEYS' FEES..................................................................................................12

VI. CONCLUSION ........................................................................................................12

CERTIFICATE OF SERVICE......................................................................................13

# INDEX OF AUTHORITIES

Page

## CASES

*Angelou v. African Overseas Union*, 33 S.W.3d 269 ) (Tex. App. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 7

*Crowell v. Cigna Group Ins.*, 2011 U.S. App. LEXIS 2424 (5th Cir. February 7, 2011) . . . . . . . . . . . . 7

*David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447 (Tex. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*E. Energy, Inc. v. Unico Oil & Gas, Inc.*, 861 F.2d 1379 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Liberto v. DF Stauffer Biscuit Co.*, 441 F.3d 318 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Kona Tech. Corp. v. Southern Pac. Transp., Co.*, 225 F.3d 595 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . 12

*Price v. Allstate Ins. Co.*, 2006 U.S. App. LEXIS 17048 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . 12

*Rasmusson v. LBC PetroUnited, Inc.*, 124 S.W.3d 283 (Tex. App. 2002) . . . . . . . . . . . . . . . . . . . . . . .12

## STATUTES

Tex. Civ. Prac. & Rem. Code § 38.001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHELLE D. CAMP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | Case No. 3:10-CV-00241-N |
| WACHOVIA MORTGAGE CORPORATION | § | |
| and WORLD SAVINGS BANK, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S BRIEF IN SUPPORT OF HER MOTION TO ENFORCE SETTLEMENT AGREEMENT AND MOTION FOR EXPEDITED HEARING

Plaintiff Michelle D. Camp hereby files this Brief in Support of her Motion to Enforce Settlement Agreement and Motion for Expedited Hearing, as follows:

### I. INTRODUCTION

This lawsuit arises out of Plaintiff's attempts to obtain a payoff amount for her mortgage loan over a year-and-a-half period from Defendants Wachovia Mortgage Corporation and World Savings Bank, FSB. Ultimately, Defendants represented a pay-off amount and Plaintiff secured a refinancing loan and paid the original loan off in its entirety, based on the representation of Defendants. A deed of trust was placed on the property by the non-party finance company, but Defendants failed to release their deed of trust after the payoff. After Plaintiff's efforts to resolve the issue failed, Plaintiff was forced to file this lawsuit.

During the course of the litigation, Defendants failed to perform any discovery and constantly disregarded their obligations to respond to Plaintiff's discovery requests and produce documents. Defendants' conduct was the subject of multiple discovery

abuse motions for which the Court had agreed to carry the award of sanctions. In violation of federal law and the Court's order compelling Defendants to produce responsive documents, Defendants began to dump alleged responsive discovery on Plaintiff within 30 days of trial. All such documentation would by law have to have been excluded at time of trial. It is this background that leads us to the settlement agreement reached between the parties.

On February 14, 2011, the day of trial, Plaintiff settled her claims with Wachovia Mortgage Corporation and Wachovia Mortgage, a Division of Wells Fargo, N.A., the purported successor-in-interest to World Savings Bank FSB ("Wachovia") via a series of emails and a phone call (the "Settlement").

However, as the parties attempted to memorialize the Settlement, Defendants attempted to add numerous terms and change the previously agreed-upon terms. When Plaintiff objected to the additional terms, Defendants set a unilateral "closing" date of April 1, stating that, if Plaintiff did not sign Defendants' version of the settlement documents on or before that date, Plaintiff faces foreclosure on her home. Plaintiff respectfully requests that the Court enforce the Settlement reached on February 14, 2011.

## II. FACTUAL BACKGROUND

1.      The pretrial conference in this case was set for 1:30 p.m. on February 14, 2011, with non-jury trial to start immediately after. Appendix, p. 42.

2.      The morning of February 14, counsel for Defendants and William Camp, as counsel for Plaintiff, conducted settlement negotiations via email and telephone. Appendix, p. 42, 43.

3.      Via email, they agreed to the following terms:

a.      A $125,000 loan at 6 percent interest by and between Plaintiff and Wells Fargo Bank, N.A.;

b.      Payment of that amount as follows:  (1) Interest only payments for five years, which would be a monthly payment of $625.00, excluding escrow for taxes, and (2) $805.38 for the remainder of the 30-year term;

c.      Escrow balance and other interest arrearages would be capped to create the new debt described above as $125,000;

d.      Defendants to escrow property taxes;

e.      Defendants will redact any negative reporting on Plaintiff's credit report for the past 24 months to show it as "no reporting";

d.      Plaintiff has the right to prepay the loan with no prepayment payoff penalty;

e.      Plaintiff purchases hazard insurance with proof provided to Defendants;

f.      The parties will cooperate to get Plaintiff's 2010 payment of property taxes back because both Plaintiff and Defendants had paid for the 2010 year.

g.      Documents would be executed by February 28, 2011, with the first payment due March 15, 2011.

Appendix, p. 43-47.

4.      In addition, the parties agreed via telephone that the settlement amount would be in the form of a new loan, and that the parties would enter into a mutual release.  Appendix, p. 42.

5.      On February 22, 2011, Defendants for the first time stated that they wanted a loan subordination agreement from a non-party Texas Legal Escrow ("TLE"), from which Plaintiff had secured the refinancing.  TLE had paid off Plaintiff's note with Defendants and taken a lien on Plaintiff's property (Defendants' subsequent refusal to

release their lien and their claims that the note was not paid off gave rise to this litigation). Appendix, p. 3.

6.      On February 28, 2011, Defendants provided draft settlement documents, which included numerous material terms that were not part of the settlement, including, but not limited to:

a.      a settlement by and between Plaintiff and Wells Fargo only, and not including the named Defendants in this case;

b.      a non-mutual release, whereby Plaintiff and her non-party spouse would release certain claims, and Wells Fargo would release others;

c.      a representation and warranty by Plaintiff that the Wells Fargo note would have first priority over the TLE note;

d.      a confidentiality provision (binding Plaintiff only);

e.      an indemnification provision with Plaintiff indemnifying Wells Fargo.

Appendix, p. 4-10.

7.      Further, although the parties agreed to a new loan, Defendants required a loan modification agreement, in which Defendants again included additional terms either not part of the settlement or directly contrary to the settlement terms:

a.      requiring payments of "any amounts necessary for escrow" without a determination of how such amounts are calculated or by whom;

b.      requiring escrow for insurance payments;

c.      an acknowledgment of Defendants' supposed first-lien position over non-party TLE; and

d.      a characterization of the settlement amount as being for escrow arrearages, when no such agreement was made.

Appendix, p. 12-15.

8.    The parties sent various proposed settlement documents back and forth, but could not agree to the additional terms required by Defendants. Appendix, p. 1.

9.    Pursuant to the terms of the February 14 settlement agreement, Plaintiff made a payment of $625 on March 14, 2011.  Appendix, p. 44, 50-55.

10.    On March 18, 2011, unbeknownst to Plaintiff, Defendants' counsel sent a subordination agreement to TLE, representing that TLE's participation in the settlement "is required to consummate the loan modification agreement and the ultimate settlement of the litigation."  Appendix, p. 35-6.

11.    Counsel further stated in the TLE letter that, without the agreement from TLE, "the Camp Loan is significantly in arrears and therefore subject to my client pursuing foreclosure proceedings.  As such, the execution of this Subordination Agreement is to the benefit of Ms. Camp and Texas Legal Escrow."  *Id.*

12.    On March 22, 2011, Plaintiff's counsel received an email from Defendants' counsel, including a version of the settlement documents that he stated were "in final form and are not subject to any further changes."  Further, he unilaterally set a "formal closing" for April 1 at his office for signing his version of the settlement documents. Appendix, p. 21-34.

13.    While Defendants' version of the final settlement documents eliminate some of the additional terms added to Defendants' original documents, several material changes remain or were added that were never agreed to by Plaintiff:

     a.    the agreement and the loan modification are contingent upon TLE agreeing to subordinate its note;

     b.    a confidentiality provision, albeit mutual in this version;

     c.    it remains a loan modification rather than a new loan, as agreed in the settlement; and

     d.    the settlement does not reference all parties to this litigation;

     e.    the release is not mutual.

*Id.*

14.    On March 24, 2011, Defendants' counsel notified Plaintiff's counsel that he was returning Plaintiff's payment because his version of the settlement documents had not been signed. Appendix, p. 41.

15.    Also on March 24, 2011, Plaintiff's counsel was notified that TLE would not sign Defendants' loan modification agreement. While TLE initially was willing to do so, Defendants' veiled threats of litigation against TLE apparently caused TLE to reconsider. Appendix, p. 41a.

## III. MOTION FOR EXPEDITED HEARING

Plaintiff hereby requests an expedited hearing on this matter because (1) Defendants are threatening foreclosure of the original loan if Plaintiff does not sign their version of the settlement documents, with all of their added terms, on or before April 1; and (2) Defendants are refusing her payments under the settlement, thereby increasing the amount of interest she must pay, as a way of coercing her into capitulating to their additional terms. Appendix, pp. 35-6, 41. Therefore, Plaintiff requests resolution of this matter before Defendants' unilateral April 1 deadline.

## IV. LEGAL ARGUMENT AND AUTHORITIES

**A.    Texas Law Mandates Enforcement of the Settlement.**

Federal courts possess the inherent power to enforce agreements entered into in settlement of litigation. However, the construction and enforcement of settlement agreements is governed by the principles of state contract law. *E. Energy, Inc. v. Unico*

---

**PLAINTIFF'S BRIEF IN SUPPORT OF HER MOTION TO ENFORCE SETTLEMENT AGREEMENT AND MOTION FOR EXPEDITED HEARING – Page 6**

*Oil & Gas, Inc.,* 861 F.2d 1379, 1380 (5th Cir. 1988) (internal quotation omitted). Under Texas law, settlement agreements are enforceable in the same manner as any other written contract. *Liberto v. D.F. Stauffer Biscuit Co.,* 441 F.3d 318, 323 (5th Cir. 2006) (internal quotation omitted). The Fifth Circuit Court of Appeals recently outlined Texas law on enforcement of settlement agreements:

> "To form a binding contract, the parties must have a meeting of the minds[.] . . . All of the parties must assent to the same thing in the same sense at the same time, and their assent must comprehend the proposition as a whole." Tex. Jur. 3d § 68; *see also David J. Sacks, P.C. v. Haden,* 266 S.W.3d 447, 450 (Tex. 2008). "Where a meeting of the minds is contested, ... determination of the existence of a contract is a question of fact." *Angelou v. African Overseas Union,* 33 S.W.3d 269, 278 (Tex. App. 2000); *see also Haws & Garrett General Contractors, Inc. v. Gorbett Bros. Welding Co.,* 480 S.W.2d 607, 609-10 (Tex. 1972) (determining whether there has been mutual assent requires drawing inferences from the parties' words and conduct and "[a]n inference is but a deduction which the trier of fact makes from the facts proved, the drawing of which is essentially the exercise of a fact finding function").

*Crowell v. Cigna Group Ins.,* 2011 U.S. App. LEXIS 2424 *12-13 (5th Cir.—February 7, 2011). A contract is "legally binding only if its terms are sufficiently definite to enable a court to understand the parties' obligations." *Liberto,* 441 F.3d at 323.

In this case, Wachovia cannot argue that the Settlement is an unenforceable "agreement to agree" because the Settlement contains all essential terms necessary to effectuate a settlement of this lawsuit. "An agreement to make a contract at a future time is enforceable if it is 'specific as to all essential terms.' By contrast, where an agreement leaves essential terms open for future negotiations, it is not a binding contract but, rather, an unenforceable 'agreement to agree.' Thus, whether the Settlement Agreement is an enforceable contract turns upon whether its 'essential terms' are set forth in the agreement or are left to future negotiation." *Id.* (internal quotations omitted). Texas courts consistently have held that a contract may be held void for

**PLAINTIFF'S BRIEF IN SUPPORT OF HER MOTION TO ENFORCE SETTLEMENT AGREEMENT AND MOTION FOR EXPEDITED HEARING – Page 7**

indefiniteness "if it fails to specify the time of performance, the price to be paid, the work to be done, the service to be rendered, or the property to be transferred." *Id.* at 324 (internal quotation omitted). As shown *infra,* the Settlement contains all material, essential terms and should be enforced.

## B.    The Terms of the Settlement.

The parties negotiated the material terms via email. As part of the settlement process, Wachovia gave Plaintiff four options of various terms on a new loan, and Plaintiff accepted Option 4. Appendix, p. 46-7. The terms of Option 4 are, as follows:

**OPTION 4**
$125,000 @ **6%**

Interest Only for 5 years: $625.00 (exclusive of escrow for taxes -- approx. $900-1000/month depending on value of collateral and tax)
30 year fully amortizing payment: $749.44
15 year fully amortizing payment: $1054.82

At end of 5 years, if only tenders the interest only payment above, the payment for the remaining 25 year term is: $805.38

**Escrow balance and other interest arrearages would be capped to create the new debt described above as $180K, $152,753.39, $140K, and/or $125K.**

*Id.* As part of the acceptance, Plaintiff added the following terms, to which Wachovia agreed:

1.    Loan at the rate indicated and fixed, 125K at 6 %;   YES
2.    Taxes, we need to make sure Wach and TLE don't double team Wachovia to Escrow Taxes
3.    Clean the credit. We can only go back 24 months and will redact negatives and will be shown No Reporting
4.    Right to prepay the loan. This means I pay the principal and loan is paid off. No prepayment pay-off penalty…YES
5.    I cover insurance with proof of insurance.   YES
6.    Cooperation to get double payment from County back. I will do the work, but need cooperation if documentation is required.   YES

Formal Modification Agreement will follow as an attachment to a settlement agreement.

All documents executed by 2/28/11 with First payment Due Mar 15th and thereafter on the 15th of each month.

Appendix, p. 46. Although Wachovia wanted all documents executed by February 28, 2011, it did not provide draft settlement documents until that date, thereby waiving that requirement. Appendix, p. 4. In addition to the written agreement outlined above, counsel for Defendants and William Camp, as counsel for Plaintiff, agreed via telephone that the release of claims would be mutual, and that the loan would be a new loan rather than a modification. Appendix, p. 42.

C.      Defendants' Unauthorized Changes to the Settlement.

On February 28, 2011, (Defendants' deadline for entering into a signed settlement agreement) Defendants provided draft settlement documents to Plaintiff. Rather than simply memorializing the parties' agreement, as shown *supra*, Defendants added numerous material terms to the agreement, as well as changed other terms:

1.      Plaintiff is required to get non-party TLE to agree to subordinate its lien to Defendants' new loan;

2.      The settlement is cast as a loan modification instead of a new loan and also attempts to characterize the Settlement as (1) Plaintiff admitting fault and (2) forgiveness of debt, which would have tax implications against Plaintiff;

3.      Plaintiff is required to escrow for insurance as well as taxes;

4.      Plaintiff is required to keep the agreement confidential, without additional consideration;

5.      A non-mutual release;

6.      Settlement with one defendant only, instead of all named Defendants.

These terms were not material, agreed-upon terms in the February 14 settlement; therefore, Plaintiff requests that the Court enforce the settlement as reached on February 14, and nothing further.

### a. Plaintiff does not control TLE.

Plaintiff cannot control whether TLE is willing to subordinate its lien to that of Defendants; further, Plaintiff cannot enter into a settlement agreement with Defendants that would put her in breach of her contract with TLE. The parties are well capable of settling all disputes as between them without the participation of a third party that was uninvolved in this litigation. Defendants have been aware of TLE's lien since the inception of the lawsuit. If TLE's participation in this dispute was material to Defendants' desire to settle this matter, Defendants should have brought TLE in as an essential party during litigation. Further, they certainly should have made TLE's participation in this settlement a material term of the February 14 Settlement.

### b. New loan versus loan modification.

The settlement documents drafted by Defendants cast the Settlement as a loan modification instead of the new loan contemplated by the Settlement. Appendix, p. 31-4. The loan modification agreement, rather than just stating the debt as a sum certain, characterizes the transaction as a forgiveness of debt, which would have unfavorable tax implications for Plaintiff. Further, this litigation did not establish that Plaintiff owed any debt whatsoever; therefore, to characterize the $125,000 loan as anything other than a settlement goes far beyond the terms of the Settlement.

### c. Escrow for Insurance.

The parties specifically agreed in the Settlement that Plaintiff would purchase insurance and provide proof of such insurance to Defendants. Appendix, p. 46.

However, the loan modification document drafted by Defendants states that an escrow for insurance will be set up, and "necessary" funds would be escrowed, without setting out how the amount of such "necessary" funds would be determined. Appendix, p. 32-3. Escrowing for insurance goes directly against the terms of the Settlement.

### d.      Confidentiality Agreement.

Defendants' first draft required that Plaintiff keep the terms of the Settlement confidential; their last draft included a mutual confidentiality clause. However, at no time did the parties negotiate or agree to a confidentiality clause. Appendix, p. 44-5.

### e.      Non-Mutual Release.

The settlement documents drafted by Defendants include a non-mutual release, which is directly contrary to the terms of the Settlement. Appendix, p. 44. Further, Defendants ask Plaintiff to include a release by her spouse, who was not a party to this litigation. Because the Settlement contemplated a mutual release, the release should be mutual in all respects.

### f.      Settlement should be with all Defendants, not just one.

From the inception of this lawsuit, Defendants have obfuscated their identity. At first, answers were filed by Wachovia Mortgage Corporation and World Savings Bank, NA. The World Savings Bank answer was amended to be from "Wachovia Mortgage, a Division of Wells Fargo, N.A., incorrectly named World Savings Bank, NA". Defendants' joint status report filed with the Court states that Wachovia Mortgage Corporation is a separate entity from Wachovia Mortgage, a Division of Wells Fargo, NA. Appendix, p. 17. During the course of this litigation, documents usually were filed only by Wachovia Mortgage, a Division of Wells Fargo. Towards the end of the case, Defendants started trying to merge their two identities, and began identifying

themselves as the sole entity "Wachovia Mortgage Corporation, a Division of Wells Fargo, N.A." Since this case was settled before trial, the issue of the proper defendant to this case was never determined. Therefore, the settlement must be by and between *all* parties who have appeared in this case: (1) Wachovia Mortgage Corporation; (2) World Savings Bank, FSB; and (3) Wachovia Mortgage, a Division of Wells Fargo, NA.

## V. ATTORNEYS' FEES

Settlement agreements are contracts, and attorneys' fees and costs are proper damages for enforcing a settlement agreement. Under Texas state law, a court has discretion to determine the amount of a fee award but the award of reasonable fees is mandatory if a party prevails on a breach of contract claim. *See DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 436 (5th Cir. 2003); Tex. Civ. Prac. & Rem. Code Ann. § 38.001; *Price v. Allstate Ins. Co.*, 190 Fed. Appx. 360; 2006 U.S. App. LEXIS 17048 (5th Cir. 2006) (Defendant "prevailed on its claim for specific performance under the settlement agreement, and the district court abused its discretion by denying the fee request"). *See also Kona Tech., Corp. v. Southern Pac. Transp. Co.*, 225 F.3d 595, 614 (5th Cir. 2000); *Rasmusson v. LBC PetroUnited, Inc.*, 124 S.W.3d 283, 287 (Tex. App. 2002).

The time and costs incurred by Plaintiff in her efforts to enforce the settlement agreement have totaled 16 hours of attorneys' time at $350 per hour; three hours of attorneys' time at $450 per hour, and five hours of legal assistants' time at $75 per hour, totaling $6,525.00. Appendix, p. 2.

## VI. CONCLUSION

For the reasons stated above, Plaintiff requests that the Court enforce the Settlement reached by the parties on February 14, award her attorneys' fees in the

amount of $6,525.00 due to the necessity of filing this Motion, and award her such further relief to which she is justly entitled.

Respectfully submitted,

**DANISE A. McMAHON, ATTORNEY AT LAW**

By: ___/s/ Danise A. McMahon_____
**DANISE A. McMAHON**
State Bar No. 00796148
P.O. Box 702833
Dallas, Texas 75370
(469) 233-7736
(469) 814-8504 (fax)

**ATTORNEY FOR PLAINTIFF MICHELLE CAMP**

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 28th day of March, 2011, a true and correct copy of the foregoing document was forwarded to Defendants' counsel of record via the Court's ECF filing system, as follows:

Andrew Soule
Kimberly Moore
Hermes Sargent Bates, LLP
901 Main St., Suite 5200
Dallas, Texas 75202

/s/ Danise McMahon_____
DANISE A. McMAHON